Scates, Justice, delivered the opinion of the court: Petition for Partition. Plaintiffs claim title as devisees under the last will and testament of one Henry J. Ross. The defendant, Watson, answers, that a certain portion of the land described in the petition was acquired by the said testator after the making and publication of the said will; that he died without children or descendants, and that Hopestill Ross, the widow of the said testator, was entitled to one-half of the said after acquired realty; and, that being so entitled, she made her last will and testament, devising her moiety thereof to him. [* 66] The court below decided, fro forma, that the after acquired lands did not pass by H. J. Ross’ will, and ordered partition to be made of those lands, setting off to the said Watson a moiety. This decision is assigned for error. After providing for the payment of his debts, etc., the testator declares: “ Item 1st. To my dearly beloved wife, Hopestill Ross, I give and bequeath the care, profit, and benefit of my whole estate, real and personal, so long as she remains my widow, except such parts thereof as are especially disposed hereafter. 2nd Item. Upon the marriage or death of my wife, it is my will and desire, that all the property which I leave in her possession, or that may accrue from it, may be equally divided between all my brothers and sisters’ children, giving each one an equal share, except John J. Ross, my brother Leonard Ross’ oldest son, who, I do not intend, shall have any share in my estate.” The remainder of the will disposes of specific légacies; but this is all that relates to the realty. The plaintiffs are the devisees in the remainder of the realty, and claim that all the real estate of which the testator died seized passed by the will to the widow for life, and to them in remainder. The testator died without children, and the widow, believing that the after purchased lands did not pass by the will, claimed one-half as widow, under our statute of descents, which she devised to Watson. It was conceded in argument, that the testator had the power, under our statute of wills, (R. L. 611, § 1,) to devise after purchased lands. The wording of the statute is very different from the 32 Hen..VIII. and the 34 and 35 Hen. VIII. c. 5, explanatory of it. The 32 Hen. VIII. provides that persons having money, lands, tenements, or hereditaments, may give and dispose of them, as well by last will and testament in writing, as by any act executed in their life time. The explanatory act confines the former act to estates in fee; and authorizes those having a sole estate in fee, or being seized in fee, coparcenary, or in common, in fee of manors, lands, tenements, rents, or other hereditaments in possession, reversion, or remainder, or rents or services, incident to any reversion or remainder, to devise as much as in him of right was or should be. This disposition by will was assimilated to a common law conveyance, and required a seizin in the testator to pass the title. 6 Cruise’s Dig. 5, 6; 1 Saund. 277, note 4. -And it seemed to be a matter of doubt whether lands, specifically described, could pass if the testator was not seized of them at the time. Mr. Saunders thoüght they would pass, and accordingly made his will; but the matter was doubted by his executors, who were great lawyers, and it was held otherwise-in Brinker v. Cook, 11 Mod. 121; S. C. 1 Salk. 388; and affirmed in the house of lords, 1 Bro. P. C. 19. But this principle can have no application to our circumstances. A conveyance in fee simple absolute of an [* 67] estate to which the grantor has no title will be effectual to pass any legal estate that the grantor may subsequently acquire, and such estate shall enure to the benefit of the purchaser. R. L. 131, § 7; Gale’s Stat. 149. The statute of wills, (R. L. 611, § 1; Gale’s Stat. 686,) empowers the testator to devise all the estate, right, title, and interest, in possession, reversion, or remainder, which he hath, or at the time of his death shall have, of, in, and to any lands, tenements, hereditaments, annuities, or rents, charged upon or issuing out of them. The section in relation to conveyances would enable a party having no title to make a conveyance valid to pass whatever title in fee he might afterwards acquire. Livery of seizin is unnecessary here to complete the title, (R. L. 129, § 1 ; Gale’s Stat. 148,) and a person out of possession may convey, although it is held adversely, so as to pass the title. R. L. 130, § 4; Gale’s Stat. 148. These statutory provisions have destroyed the principles and distinctions laid down by the courts of England, under their statutes of wills, upon this subject. Here the testator may devise lands, so as to pass the title of all after purchases. So the only question here is, did the testator intend to devise all the estate which he might purchase, as well as that of which he was then seized ? That intention must prevail, if it be consistent with the rules of law. 17 Johns. 281. It is not pretended that the widow took a fee, but only a life estate, or during widowhood, with remainder to brothers and sisters’ children. If the testator did not intend to devise the lands, dying without children or their descendants, the widow would be entitled to one-half of tlie real estate in fee, and might well dispose of the whole bj will, as she has done, in this ease to Watson. R. L. 625, § 43 ; Gale’s Stat. 696. The whole will should be taken together in ascertaining the intention of the testator. So much of it as throws any light upon his intention in this respect, I have transcribed. He says that he gives “ the care, profit, and benefit of my whole estate, real and personal” to his wife, “ so long as she remains my widow, except such parts thereof as are specifically disposed of hereafter.” This language clearly indicates an intention not to die intestate., as to any portion of the property, real or personal; and no one could pretend that, she might not claim all that he then owned, not otherwise “specifically disposed of.” And if the testator understood, as the law presumes every one to know, that by law he could by this mode of conveyance, as well as by deed, convey a fee in lands which he might at any time purchase before his death, when his will would become operative, it would be difficult to.resist the conclusion, that he intended to [* 68] give her all that he might then possess. Having this power to convey in anticipation of acquiring title, and knowing when this dormant will would become operative to effectuate and accomplish his wishes, he declares that he gives his wife his “ whole estate, real, and personal.” This clause in the will seems to me to admit of no doubt as to his wishes. But it is still made clearer by the next clause, “ Upon the marriage or death of my wife, it is my will and desire, that all the property, which I leave in her possession, or that may accrue from it, shall be equally divided,” etc. Here is an explanation of his purpose still more comprehensive. For he made his wife executrix of his will, and would of course leave all his property in her possession. It is comprehensive enough to include those portions which had been specifically disposed of to others, and, in this respect, it is necessary to restrict the meaning, so as to effectuate the intent expressed in other parts of the will, in giving specific legacies to others, but which would also be left in her possession., Again: the debts are charged upon his estate, real and personal, and for the purpose of paying them, is not all the property, real and personal, left in her possession ? Lands, under such a charge of debts, and even under their liability to the payment of debts by our statute, would descend to heirs only sub modo. Would not such a charge in a will give the executor an actual or quasi possession of those lands, for the purpose of paying those debts ? Again : would not these debts be chargeable exclusively upon these after purchased lands, if they do not pass by the will ? The testator had disposed of a- part of his goods, specifically, and then gives all the rest of his property, real and personal, to' his wife, and remainder to his nephews and nieces. Could these specific and general legacies be made to bear the charge of these debts so as to exonerate the intestate property ? Administrators derive their powers from the court; the executrix derives her authority from the testator, and might sell the lands for the payment of the debts which she is directed to pay out of those lands. It would seem to follow that those lands must be left in her possession for the purposes of the will, in paying the debts at least. If, however, I could infer no other intent than merely to pay the debts, I should not think they ought to be divided amongst the devisees, after satisfying creditors. But the intention of the testator not to die intestate is still further manifested, I think, beyond all doubt. At the death of his wife, “all the property” which he “leaves in her possession, or that may accrue from it, may be equally divided between all my brothers and sisters’ children, giving each one an equal share, except John J. Ross, my brother Leonard Ross’ oldest son, who I do not intend shall have any share in my estate.” The testator was childless, and if he died intestate as to any portion of his real property, it would go in part equally to his brothers and sisters, or parents, or in case of their death, to their children ; in which event John J. Ross would share in his [* 69] estate, contrary to his expressed intention to disinherit him. This intention of disinheriting John J. Ross is expressed so cléarly and manifestly, as to leave no room for doubt: “I do not intend” he “shallhave any share in my estate.” Any construction of the will, which would leave him intestate as to any portion of the property, would defeat the intention, by allowing him some share in the estate. For it would be absurd to say that he was disinherited as to property not disposed of by the will, and in- relation to which the testator had said nothing, while there is a devise to which this language would apply; a devise comprehensive enough to include all his estate, and so explained to mean, by this complete disinherison of John of any share in his estate. It is the opinion of the court, that the decree of the court below be reversed, and the cause remanded, that further proceedings may be had not'inconsistent with this opinion, and that the plaintiffs recover their costs against George K. Watson. Judgment reversed.